566 So.2d 1261 (1990)
HARDIN's BAKERIES and Liberty Mutual Insurance Company
v.
DEPENDENT OF Leonard T. HARRELL, Deceased.
No. 07-CC-58852.
Supreme Court of Mississippi.
September 5, 1990.
Rehearing Denied September 26, 1990.
*1262 Suzanne N. Saunders, Saunders Abel & Fortenberry, Jackson, for appellant.
Rex F. Sanderson; J. Winston Brown, Houston, for appellee.
Before DAN M. LEE, P.J., and PRATHER and ROBERTSON, JJ.

I. INTRODUCTION
PRATHER, Justice, for the Court:
This is a workers' compensation case involving the award of death benefits to the spouse of Leonard T. Harrell, who died of a heart attack allegedly arising out of, and in the course of, his employment with Hardin's Bakeries. The Workers' Compensation Commission apportioned the award on the basis of pre-existing health conditions but, on appeal, the Scott County Circuit Court rejected the apportionment and awarded Leonard's widow full benefits. The circuit court's decision was appealed to this Court.
The award of benefits is affirmed; the circuit court's award of full benefits is reversed; and the Commission's apportionment determination, which was supported by substantial evidence, is reinstated.

A. Factual Background
On May 31, 1983, 54-year-old Leonard T. Harrell was in Morton, Mississippi, delivering bread for Hardin's Bakeries when he began to experience chest pain. Leonard was first taken to West Scott Baptist Hospital in Morton and then transferred to St. Dominic Hospital in Jackson where the "admitting diagnosis" was "unstable angina, rule out recent myocardial infarction."[1] Tests performed at St. Dominic indicated that the pain he was experiencing was not in fact a heart attack. A chest x-ray did, however, reveal lesions on Leonard's lung. About a week later, Dr. David Westbrook, a pulmonary specialist, performed a stressful bronchoscopy[2] on Leonard to determine whether the lesions were cancerous. Less than thirty minutes after the bronchoscopy was performed, Leonard "went into cardiac arrest" and died. The final diagnoses were listed in the following order: (1) cardiac *1263 arrest, (2) myocardial infarction, and (3) arteriosclerotic cardiovascular disease.
Leonard's widow subsequently filed a motion to controvert with the Mississippi Workers' Compensation Commission  alleging that her husband's death arose out of, and in the course of, his employment. An administrative judge held a hearing.
The evidence revealed various "risk factors" which made Leonard a likely candidate for heart disease and heart attack. For example, Leonard had smoked three packs of cigarettes daily since his teenaged years and consumed approximately "one-half bottle of alcohol" daily for an unspecified number of years. His family had a history of heart-related problems; a brother died of a heart attack and another brother underwent heart surgery at the age of forty.
The evidence also revealed that Leonard had been employed by Hardin's for twenty-five years, and his responsibilities entailed daily delivery of bread commencing at 4:00 a.m. and concluding at 3:30 p.m. He was constantly "in and out" of his delivery truck carrying trays of bread which were deemed "not heavy" by one witness. Another witness described the work as "tiring" but not laborious; that is, Leonard did not have to do such tasks as loading the truck at the beginning of each work day, and his truck was equipped with a dolly which was supposed to be used for transporting the trays of bread.
Dr. Howard Clark, a general practitioner of medicine with some emphasis on coronary care, initially treated Leonard upon admission to West Scott Hospital. Clark testified that, based on evidence obtained from an electrocardiogram and other sources, he "thought" that Leonard was an "acute cardiac patient"; he subsequently administered medication and other treatment as though Leonard had just had a heart attack or was about to have a heart attack. Clark additionally testified that "[p]hysical exertion would have caused this situation [and Leonard] told me he was at work."
Dr. Thomas Paine, a board-certified cardiologist who treated Leonard at St. Dominic Hospital, testified that "lifting, fatigue, and work ... are thought to be contributing factors in having angina in someone with known coronary [heart] disease."
Dr. William Rosenblatt, a specialist in cardiovascular disease, did not personally examine Leonard but did review his medical records. Rosenblatt testified that a correlation between the heart attack and work stress could exist. Rosenblatt added that pre-existing conditions and the bronchoscopy were probably responsible for Leonard's death.
Dr. David Westbrook, testified that Leonard's "strong family history of heart disease and his strong smoking history" were factors to which his death may have been attributable. Westbrook added that he could not "state with certainty what Leonard died from."
At the conclusion of the hearing, the administrative judge awarded death benefits and apportioned (reduced) the award by one-third on the basis of pre-existing or non-work-related conditions. Hardin's Bakeries and Liberty Mutual Insurance Company (Hardin's liability insurer) appealed the judge's decision to the Workers' Compensation Commission, which affirmed the award of benefits but increased the apportionment to two-thirds. The Commission's decision was appealed to the Scott County Circuit Court, which affirmed the award of benefits, reversed the apportionment, and awarded full benefits to Leonard's widow. Finally, the circuit court's decision was appealed to this Court.

B. The Issues
Hardin's and Liberty Mutual presented numerous issues which have been consolidated:
(1) WHETHER THE EVIDENCE SUPPORTS AN AWARD OF DEATH BENEFITS;
(2) WHETHER AN AWARD OF DEATH BENEFITS SHOULD HAVE BEEN APPORTIONED TO REFLECT PRE-EXISTING CONDITIONS.

*1264 II. ANALYSIS

A. Issue # 1 and the Law

1.
In a workers' compensation case, the claimant bears the burden of proving by a "fair preponderance of the evidence" each element of the claim. Bracey v. Packard Elec. Div., Gen. Motors Co., 476 So.2d 28, 29 (Miss. 1985). These elements are: (1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the death or claimed disability. MISS. CODE ANN. §§ 71-3-3 & -7 (1972); V. DUNN, MISSISSIPPI WORKERS' COMPENSATION § 265 (3rd ed. 1982); see also Strickland v. M.H. McMath Gin, Inc., 457 So.2d 925, 928 (Miss. 1984).
The Commission is the ultimate fact-finder. Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437 (Miss. 1985); Valley Dry Goods Co. v. Odom, 244 Miss. 125, 141 So.2d 254 (1962). Accordingly, the Commission may accept or reject an administrative judge's findings. Day-Brite Lighting Div., Emerson Elec. Co. v. Cummings, 419 So.2d 211 (Miss. 1982). "Doubtful cases should be resolved in favor of compensation, so as to fulfill the beneficial purposes" of statutory law. Miller Transporters, Inc. v. Guthrie, 554 So.2d 917, 918 (Miss. 1989) (citing authoritative support).
The circuit courts of this state serve as intermediate appellate courts for workers' compensation cases. Gulf Coast Drilling & Exploration Co. v. Permenter, 214 So.2d 601, 603 (Miss. 1968). Circuit courts "review all questions of law and of fact [and i]f no prejudicial error be found, the matter shall be affirmed and remanded to the commission for enforcement." MISS. CODE ANN. § 71-3-51 (1972).
If the Commission's fact-findings are "supported by substantial evidence," then they "`must' remain undisturbed by the reviewing court." R.C. Petroleum, Inc. & The Travelers Insurance Co. v. Hernandez, 555 So.2d 1017, 1021 (Miss. 1990) (quoting Myles v. Rockwell Int'l, 445 So.2d 528, 536 (Miss. 1983)). Of great import, fact-findings supported by substantial evidence must remain undisturbed "even though that evidence would not convince us" were this Court the fact-finder. Chandler, 475 So.2d at 439 (citing South Cent. Bell Tel. Co. v. Aden, 474 So.2d 584, 589-90 (Miss. 1985)); see also Hernandez, 555 So.2d at 1021-22.

2.
In determining whether benefits should have been awarded, this Court must consider, on an ad hoc basis, whether the three elements of a workers' compensation claim were proved by a fair preponderance.
In the case sub judice, Hardin's and Liberty Mutual do not dispute that Leonard's chest pains and, ultimately, his fatal heart attack, were anything but "accidental." Therefore, the first element  an accidental injury  is deemed admitted without further inquiry.
The second element  an accidental injury arising out of and in the course of employment  is deemed proved. This Court on numerous occasions has sanctioned an award in cases where an activity "over and above the ordinary wear and tear of life" was found to have caused an injury. Such activities were as routine as operating an automatic chisel, measuring a ditch, operating a filling station, and working at a desk as a bookkeeper. See generally V. DUNN, supra, § 93, at 113-14. Leonard's job responsibilities performed over a twenty-five-year period were found by the administrative judge, the Commission, and the circuit court to have contributed to or aggravated to some extent the condition which led to Leonard's chest pain. In view of the evidence, this Court concurs.
Finally, the third element  a causal connection between Leonard's chest pain and his death  is also deemed proved. The evidence clearly shows a connection between Leonard's chest pain and his fatal heart attack which occurred only seven days later.
In sum, the administrative judge, the Commission, and the circuit court concluded that the evidence was sufficient to prove the three elements and justify an *1265 award. Applying the law to the evidence, this Court also concludes that an award was justified.

B. Issue # 2 and the Law

1.
Mississippi's workers' compensation law provides for the apportionment of disability or death benefits under certain circumstances. The applicable statute provides, in pertinent part:
Where a preexisting physical handicap, disease, or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease, or lesion contributed to the production of the results following the injury.
MISS. CODE ANN. § 71-3-7 (1972).

2.
As discussed, the administrative judge apportioned the award by one-third due to pre-existing conditions present in Leonard at the time of his injury. The Commission increased the apportionment to two-thirds, and the circuit court rejected the Commission's apportionment, awarded full benefits, and rationalized that the record was devoid of substantial evidence to warrant a reduction of benefits. This Court must now decide which determination, if any, is correct.
The issue of apportionment, particularly in heart-injury cases, is a difficult task which can only be made on an ad hoc basis. Notably, the issue has long troubled this Court, a fact noted by Justice Brady more than twenty years ago:
Heart failures, attacks and diseases have presented unique and most difficult problems under the Mississippi Workmen's Compensation Act. Just as the rainbow embodies in its spectrum all colors, so have the Workmen's Compensation Commission and this Court utilized all legal strategies in determining the compensability or noncompensability of claims relating to heart maladies. An objective, invariable and just yardstick or criterion of determiners relating to heart cases appears impossible of realization. In our effort to find the pot of gold called justice at the foot of the rainbow[;] thus it is under remarkably similar factual circumstances that the orders of the Commission as affirmed or reversed by this Court vary like the rainbow's colors from red to violet.
Leake County Coop. v. Barrett's Dependents, 226 So.2d 608, 613 (Miss. 1969); see Sullivan, Heart Injuries Under Workers' Compensation: Medical and Legal Considerations, 14 SUFFOLK U.L.REV. 1365, 1365 (1981) ("The adjudication of claims for heart injuries under workers' compensation laws is difficult because of the progressive nature of coronary heart disease and the ambiguous relationship of emotional stress and physical exertion to the development and aggravation of coronary heart disease."); Larson, The "Heart Cases" in Workmen's Compensation: An Analysis and Suggested Solution, 65 MICH.L.REV. 441, 475 (1967) ("The compensability of heart attacks continues to be probably the most prolific and troublesome problem in compensation law."); Note, Scientific Decisionmaking in Workers' Compensation: A Long Overdue Reform, 59 So.Cal.L.Rev. 911, 934 (1986) ("When courts apportion disabilities between work-related and non-work-related factors, contention usually results. Medical experts can only speculate as to the percentages of causation, since uncertainty abounds within the medical community as to the etiology of a particular disease."); see also Stuart's Inc. v. Brown, 543 So.2d 649, 655 n. 13 (Miss. 1989) ("Today's opinion does not address either `occupational disease' or heart attack cases. Indeed, heart attack cases seem sui generis.").
The problem inherent in an apportionment determination is evinced by the three different results reached in the case sub judice by the administrative judge (one-third), the Commission (two-thirds), and the circuit court (zero). The different results are attributable to the experts' inability or reluctance, for the most part, to assign specific percentages of blame for Leonard's death to the risk factors delineated in Subsection I(A) of this opinion (e.g., smoking *1266 and drinking habits, family medical history, and job responsibilities). In addition, an autopsy which may have provided some enlightenment was not performed. See Larson, supra, at 475 ("Proof that employment was not a ... cause of a heart attack can be ... perhaps afforded by an autopsy.") (citing Burris v. Lewis, 2 N.Y.2d 323, 160 N.Y.S.2d 853, 141 N.E.2d 424 (1957)).

3.
Confronted with the difficulty inherent in a case such as this and the varying results reached by the administrative judge, the Commission, and the circuit court  this Court is reminded of the applicable standard of review. That is, the Commission's fact-finding "`must' remain undisturbed by the reviewing court" if its finding is "supported by substantial evidence." Hernandez, 555 So.2d at 1021-22; Chandler, 475 So.2d at 439. This Court holds that, contrary to the circuit court's conclusion, the Commission's fact-finding is sufficiently supported by the evidence and must remain undisturbed.

III. CONCLUSION
For the foregoing reasons, this Court holds that substantial evidence was presented to prove that Leonard's employment aggravated his pre-existing conditions and thereby contributed to his death. See Alexander v. Campbell Constr. Co., 288 So.2d 4, 8 (Miss. 1974). The award of death benefits is affirmed, and the Commission's apportionment determination is reinstated.
AWARD OF BENEFITS AFFIRMED; CIRCUIT COURT AWARD OF FULL BENEFITS REVERSED; WORKERS' COMPENSATION COMMISSION'S APPORTIONMENT OF BENEFITS REINSTATED.
HAWKINS, DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
ROY NOBLE LEE, C.J., not participating.
NOTES
[1] A "myocardial infarction" is an interruption of the arterial blood supply to the heart muscle resulting in the death of part of the muscle tissue. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 778 (25th ed. 1974). In layman's terms, a myocardial infarction is a heart attack.
[2] This procedure entails inserting a tube into the patient's nose and running the tube into the lungs. The tube can be used to scrape and remove lung tissue. See STEDMAN'S MEDICAL DICTIONARY 195 (5th ed. 1982).