LEE, P.J.,
 

 for the Court.
 

 PROCEDURAL HISTORY
 

 ¶ 1. Joseph Hopper filed a workers’ compensation claim against his employer, Joe Krevinec d/b/a Joe’s Garage, alleging two work-related neck injuries. A hearing was held, and the administrative law judge (ALJ) denied workers’ compensation benefits. Hopper appealed to the Mississippi Workers’ Compensation Commission (Commission) and filed a motion to introduce additional evidence. The Commission affirmed the order of the ALJ but remanded the case for consideration of Hopper’s motion for additional evidence. Upon remand, the ALJ allowed a report from Hopper’s treating physician, Dr. James Doty, a neurosurgeon, to be introduced into evidence. After considering the additional evidence, the ALJ issued a
 
 *1113
 
 second order, reversing the first order and finding that benefits should be awarded.
 

 ¶ 2. Krevinec and American Home Assurance Company, the workers’ compensation carrier, appealed to the Commission. The Commission reversed the order of the ALJ, found that the injuries were not work related, and dismissed the claim. Hopper appealed to the Circuit Court of Harrison County. The circuit court affirmed the second decision of the Commission.
 

 ¶ 3. Hopper now appeals, asserting that the Commission erred in denying him workers’ compensation benefits. Finding no error, we affirm the Commission’s decision.
 

 FACTS
 

 ¶4. Hopper testified that on May 7, 2004, he was injured while helping unload tires off of a delivery truck. Hopper stated that when he reached out to grab a tire with his right arm, the tire jerked his arm around. He testified that by the end of the day, his arm began hurting. The next day he was in excruciating pain but worked the entire day. He testified that he did not mention the injury to anyone because his supervisor was not at work, and he thought it was just a pulled muscle. On May 17, 2004, he was at work opening the shop when he sneezed and heard a popping sound in his back. He testified that after he sneezed, the pain got so severe he had to leave work. He testified that he told his supervisor, Bobby Tyson, about the pain.
 

 ¶ 5. Hopper saw Dr. Richard Smith, a general physician, who gave him pain medication and a cortisone shot. Approximately a month later, the pain had not subsided, and Hopper went to the emergency room at Gulfport Memorial Hospital, where he was seen by Dr. Doty. Dr. Doty performed an examination and ordered a MRI of his neck. Dr. Doty advised Hopper that he had damaged discs in his neck and that he needed surgery to insert metal plates and screws to repair the damage. The surgery was performed on June 20, 2004. Hopper went back to Dr. Doty approximately three months later with complaints of intense pain in his right arm. He reported to Dr. Doty that since the surgery, he had also been experiencing the same pain in his left arm and that he had no problem with his left arm prior to the surgery.
 

 ¶ 6. Hopper testified that he knew of no other activities that would have attributed to his injury. Tyson testified that Hopper did not report a work-related injury, but instead Hopper told him that he had sustained a neck injury at home while repairing his personal vehicle. Tyson testified that Hopper told him before May 17, 2004, that he had neck problems, but that Hopper continued to work until he was physically unable.
 

 ¶ 7. After the case was remanded from the Commission to the ALJ, Hopper was seen by Dr. Terry Smith, a neurosurgeon, at the request of Krevinec and American Home Assurance Company. Dr. Smith’s opinion was that, based on the medical records, there was no history of a work-related accident on May 7 or May 17, 2004, and the surgery performed on Hopper’s neck was unrelated to any injury that occurred at work. Dr. Smith also noted that Hopper had several previous neck injuries listed in his medical records.
 

 ¶ 8. As to his history of neck injuries prior to May 7, 2004, Hopper crushed several discs in his back at the age of eighteen when he jumped off of a four-foot-high embankment at a lake and fell on his head. He testified that it took approximately two years for the pain to subside and for his neck to return to normal. In 1989, he bumped his head in a swimming pool and
 
 *1114
 
 sprained a muscle in Ms neck. He testified that despite these injuries, he did not have any significant problems with his neck until he was injured at Joe’s Garage. At the time of the hearing, Hopper was forty-three years old.
 

 STANDARD OF REVIEW
 

 ¶ 9. The standard for appellate review of workers’ compensation claims is limited. It is well settled that “[t]he Commission is the ultimate fact-finder.”
 
 Hardin’s Bakeries v. Harrell,
 
 566 So.2d 1261, 1264 (Miss.1990). Our review is limited to a “determination of whether or not the decision of the [Cjommission is supported by the substantial evidence.”
 
 McCarty Farms, Inc. v. Banks,
 
 773 So.2d 380, 386(¶ 23) (Miss.Ct.App.2000) (quoting
 
 Delta CMI v. Speck,
 
 586 So.2d 768, 772-73 (Miss.1991)). “This Court will overturn a[C]ommission decision only for an error of law or an unsupportable finding of fact.”
 
 Cook v. President Casino,
 
 740 So.2d 963, 966(¶ 16) (Miss.Ct.App.1999) (citation omitted).
 

 DISCUSSION
 

 ¶ 10. Hopper argues that the ALJ’s order and the Commission’s original decision, finding that his injury was com-pensable, were correct and should be upheld. The original order found that his testimony and the testimony of Dr. Doty was credible and that the injury occurred when Hopper moved the tire on May 7, 2004.
 

 ¶ 11. The Commission’s second decision focuses on the lack of evidence that Hopper’s injury was work related. The Commission noted: “There is no evidence except [Hopper’s] own testimony that this sneeze even occurred at work.” The Commission also gave great weight to the absence of any report of injury by Hopper to his employer. The medical records did not reflect that the injury was work related, and Tyson testified that he had no knowledge that Hopper was claiming to have a work-related injury until the petition to controvert was filed. The records from Hopper’s visit to Gulfport Memorial Hospital indicated that he had no trauma and that his condition was not due to an on-the-job incident. The Commission found the most compelling evidence weighing in favor of Krevinec to be Hopper’s statement he provided to the emergency room at Gulfport Memorial Hospital that the sneeze occurred “at night,” and he had no pain until the next morning. Hopper testified at the hearing that the sneeze occurred at work. The Commission found that this testimony “makes [Hopper’s] version of the events more suspect than credible.”
 

 ¶ 12. The Commission found that Dr. Doty’s testimony was not reliable because it was based solely on Hopper’s version of the events. The Commission also found Dr. Doty’s testimony uncertain because he stated that Hopper
 
 “probably
 
 injured his disc [on May 7, 2004], and then that one precipitating event when the sneeze happened finally sort of put him over the edge.” (Emphasis added). However, conflicting evidence was presented as to when the sneeze took place. Hopper stated that he had been at work for about twenty minutes on May 14 when he sneezed and the pain from the May 7 injury was exacerbated. Tyson, Hopper’s supervisor, testified that Hopper had related to him that he was injured while working on his personal vehicle at home. Also, the medical record from the hospital stated that the sneeze occurred at night with an onset of pain occurring the next morning. The Commission found that Hopper’s claim was mainly supported by his own testimony, and Hopper’s and Dr. Doty’s testimonies
 
 *1115
 
 were not as credible as that of Tyson and the medical records.
 

 ¶ 13. Keeping in mind this Court’s deferential standard of review, we cannot find that the Commission erred in denying workers’ compensation benefits. The Commission found that conflicting testimony was presented by Hopper, Dr. Doty, and Dr. Smith. The Commission “serves as the ultimate fact finder in addressing conflicts in medical testimony and opinion.”
 
 Raytheon Aerospace Support Servs. v. Miller,
 
 861 So.2d 330, 336(¶ 13) (Miss.2003). “Where medical expert testimony is concerned, [the supreme court] has held that whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant.”
 
 Id.
 
 (quoting
 
 Kersh v. Greenville Sheet Metal Works,
 
 192 So.2d 266, 268 (Miss.1966)).
 

 ¶ 14. The Commission agreed with Dr. Smith and found that “[t]he fact that [Hopper] sought medical attention soon after the alleged injury on May 7, 2004 and May 17, 2004[did] not render [Hopper’s] testimony more credible given the fact that he had a long[-]standing history [of] pre-exist-ing non-work related neck problems.” Even if this Court would not have reached the same decision as the Commission, we must affirm when the Commission’s findings are supported by substantial evidence and are neither arbitrary or capricious.
 
 Id.
 
 at 338(¶ 25). The Commission’s findings were supported by Dr. Smith’s testimony and the inconsistencies between Hopper’s testimony and the medical records. Therefore, we affirm the findings of the Commission. Hopper’s issues on appeal are without merit.
 

 ¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.